**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**FREEMAN W. SMITH, JR.**
                                        **Petitioner,**


          v.                                        **06-CV-243**


**UNITED STATES OF AMERICA,**

                                        **Respondent.**


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION & ORDER

## I.  INTRODUCTION

Freeman W. Smith (hereinafter "Petitioner") instituted the instant action pursuant to 28

U.S.C. § 2255 challenging his criminal conviction and sentence.  For the reasons that follow, his

petition seeking a writ of habeas corpus is denied and the action is dismissed.

## II.  BACKGROUND

On December 3, 2002, law enforcement officers executed a search warrant at Petitioner's

home and seized items used to manufacture methamphetamine, such as pseudoephedrine pills and

anhydrous ammonia, as well as over $35,000 in cash.  (Plea Agreement at 6, November 21, 2003).

Thereafter, on February 25, 2003, law enforcement officers executed another search warrant at

Petitioner's residence and recovered processed methamphetamine and over $10,000 in cash.  Id.

On November 21, 2003, Petitioner executed a Plea and Cooperation Agreement with the

government and entered a plea of "Guilty" to one count of violating 21 U.S.C. § 841(a)(1) for

manufacturing, distributing, and possessing with intent to distribute methamphetamine.  (Plea

Agreement at 1-2).  Petitioner admitted to being responsible for distributing 50 or more grams of

methamphetamine and, therefore, pursuant to the penalty provisions of 21 U.S.C. 841(b)(1)(B), was

subject to a maximum term of imprisonment of 40 years and a mandatory minimum term of

imprisonment of 5 years.  Id.  On March 11, 2005, this Court sentenced Petitioner to a term of 5 years

(60 months) incarceration, a 4 year term of supervised release, payment of a $100 special assessment,

and restitution in the amount of $5,087.75.  The instant action followed.

## III.  DISCUSSION

### A.  Waiver of Collateral Attack under Plea Agreement

Petitioner's action must be denied because the Plea and Cooperation Agreement executed by

Petitioner and the government on November 21, 2003 expressly contained a knowing and voluntary

waiver of "any and all rights, including those conferred by. . .28 U.S.C. § 2255, to. . .collaterally attack

his conviction and any sentence of imprisonment of 151 months or less."  (Plea Agreement at 12).

Petitioner's sentence of 60 months was within the stipulated range of 151 months or less and, therefore,

his claim is meritless unless he challenges the validity of his plea agreement, which he does not.

Instead, Petitioner confirmed in his statements at the sentencing hearing that he was satisfied with

Counsel's representation, that he had an opportunity to discuss the consequences of his plea agreement

with Counsel, and that he understood the contents of the plea agreement, including the waiver of the

right to appeal.  (Plea Hr'g Tr. at 19-20).

In United States v. Garcia-Santos, 273 F.3d 506, 507 (2d Cir. 2001), a § 2255 petition was

similarly denied because a petitioner had pleaded guilty under a plea agreement and expressly agreed

not to appeal or collaterally attack his conviction under § 2255 so long as he was sentenced within a

particular Sentencing Guidelines range.  The court determined that where the sentence imposed fell

within the stipulated range and a waiver was obtained knowingly and voluntarily, the waiver to

collaterally attack a conviction will be enforced. Id. at 508.  Here, Petitioner expressed his voluntary

waiver of his right to appeal or collaterally attack his sentence both in the plea agreement and during

the plea allocution on November 21, 2003:

> THE COURT: In that plea agreement that you just told me you signed,
> on page 12, paragraph 15, you've agreed to give up or waive any rights to
> appeal or collaterally attack the conviction and any sentence of
> imprisonment of 151 months or less, while reserving to yourself the right
> to appeal any higher sentence.  So, did you understand what you were
> doing when you gave up those appeal rights?
> THE DEFENDANT: Yes.
> THE COURT: Did you do that voluntarily?
> THE DEFENDANT: Yes.

(Plea Hr'g Tr. at 20).  Like in Garcia-Santos, Petitioner's waiver of his right to collaterally attack his

sentence was made knowingly and voluntarily because (1) the plea agreement was signed; (2) he stated

that he understood the terms of the plea agreement; (3) he did not attempt to appeal his sentence; (4)

the present § 2255 motion does not claim that the terms of the waiver in the plea agreement were

ambiguous to him; and (5) at the time of the execution of the plea agreement he did not assert that he

did not understand the consequences of waiving his right to appeal and petition under § 2255.  273

F.3d at 508.

Furthermore, Petitioner's waiver must be enforced because, without a showing of

involuntary waiver, disregarding the validity of a waiver as part of a plea agreement undermines the

value of the plea bargaining system.  In United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.

1993), the court addressed this issue when it held that where a defendant secures the benefits of a plea

agreement and knowingly and voluntarily waives the right to appeal a certain sentence, he cannot

appeal the merits of a sentence conforming to the agreement because that would render the plea

bargaining process and the resulting agreement meaningless.  In this case, Petitioner benefitted by being sentenced to 60 months, which is near the bottom of the stipulated Sentencing Guidelines range and at the statutory mandatory minimum.  His waiver was part of the bargain by which he received the government's agreement to an acceptable Sentencing Guidelines range and not seek upward departures or adjustments beyond that range.  Petitioner therefore received assurance that the sentence would not reach maximum severity.  (Plea Agreement at 9).

### B.  Ineffective Assistance of Counsel

Even assuming Petitioner did not waive his right to collaterally attack his sentence, his request for relief must be denied.  Petitioner alleges that his Counsel was constitutionally ineffective during the sentencing phase, as discussed more fully below.

### 1.  Standard

To state a Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: (1) his Counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) Counsel's inadequate assistance was prejudicial to his defense.  Strickland v. Washington, 466 U.S. at 688, 692 (1984).

In analyzing the first prong of Strickland, the Court must maintain a strong presumption that Counsel's representation was adequate within the "wide range of reasonable professional assistance."  466 U.S. at 689.  The Petitioner must overcome this presumption by presenting conduct he believes to be ineffective.  Id.  Therefore, Petitioner must first identify the alleged unprofessional "acts or omissions of counsel."  Id. at 690.  The Court will then determine whether, in light of the circumstances of the case, Counsel's assistance was an exercise of incompetent professional judgment that constitutes a constitutional violation.  Id.  Executing poor legal strategy or making a wrong

decision does not constitute deficient conduct falling below an objective standard of reasonableness. Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000).  Rather, Counsel's error must be grievous enough to raise serious concerns that Counsel's assistance was unreasonable, and fell below the prevailing professional standard of sound and competent representation.  Id. at * 7.  The Court must determine the reasonableness of the attorney's challenged conduct "viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.

To satisfy the second prong of Strickland, Petitioner must show that but for Counsel's inadequate representation, there is a reasonable probability that the result of the case would have been different.  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine the confidence in the outcome."  Id.

## 2.  Incompetence in Federal Sentencing Guidelines and Procedures

In his Memorandum of Law, Petitioner claims that Counsel failed to adequately investigate all of the available sentencing alternatives and advocate for all potential mitigating factors.  (Pet'r Mem. Supp. § 2255 at 2, February 24, 2006).  Petitioner contends that Counsel was incompetent because he (a) acquiesced to the Court's refusal to treat the government's U.S.S.G. § 5K1.1 motion as a simultaneous request for a downward departure from the mandatory minimum sentence under 18 U.S.C. § 3553(e), and (b) failed to move the Court to credit the Petitioner at sentencing for his prior state imprisonment pursuant to U.S.S.G. § 5G1.3(b)(1).  (Pet'r Mem. at 13, 16).

### a.  Counsel Obtained a Good Sentence for Petitioner

Counsel provided objectively reasonable assistance by obtaining a reduction of Petitioner's sentence to 60 months imprisonment from more severe possible punishments based on the Sentencing Guidelines and 21 U.S.C. § 841.  By negotiating with the government, Counsel successfully persuaded

the government to move for a downward departure pursuant to § 5K1.1 of the Sentencing Guidelines based on Petitioner's substantial assistance.  As a result, Petitioner received a 5-level reduction. Petitioner, therefore, faced a level 18 offense rather than a level 23 offense, which would have left him with a possible punishment of 92-115 months imprisonment.  (Sentencing Hr'g Tr. at 7-8, March 11, 2005).  The Court also acknowledged Counsel's effective assistance when it stated that with Petitioner's criminal history category "[he'd] be looking at something around, 20, 30 years.  We are not talking that because of what [Counsel] has done for [the Petitioner]. . . ."  (Sentencing Hr'g Tr. at 17).

### b.  U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)

Petitioner claims that Counsel failed to adequately object to the Court's position that a U.S.S.G. § 5K1.1 motion to depart from the applicable guidelines range based on substantial assistance does not concomitantly imply application of a downward departure from a statute's mandatory minimum sentence under 18 U.S.C. § 3553(e).  However, further objection by Counsel was not unreasonable and would not have led to a different result because departure from a statutory mandatory minimum sentence requires a separate motion under § 3553(e).  Melendez v. United States, 518 U.S. 120, 125 (1996).

In Melendez, the court held that a § 5K1.1 motion does not permit a downward departure below a statutory minimum sentence without a separate § 3553(e) motion.  518 U.S. at 125.  Here, Petitioner was charged with a one count violation of 21 U.S.C. § 841(a)(1) and faced a statutory minimum sentence of 5 years imprisonment.  The plea agreement stipulated that in consideration of the Petitioner's guilty plea and substantial assistance in the government's investigation, the government may file a § 5K1.1 motion to depart from the applicable guideline range.  (Plea Hr'g Tr. at 18, November 21, 2003).  However, the agreement made no reference to filing a motion to move the Court

- 6 -

pursuant to § 3553(e) to impose a sentence departing below the statutory minimum.  Without a separate

§ 3553(e) motion, the Court had no authority to depart below the statutory minimum.

### c.  U.S.S.G. § 5G1.3(b)(1)

Petitioner also asserts that Counsel failed to adequately advocate and move the Court to

apply U.S.S.G § 5G1.3(b)(1) at sentencing, crediting Petitioner for time served in state prison for a

prior conviction.  Petitioner cites United States v. Garcia-Hernandez, 237 F.3d 105 (2d Cir. 2000), and

argues that to trigger § 5G1.3(b), a separate offense other than the one for which defendant is being

sentenced must not only be taken into account in determining the sentence for the instant offense, but

must also be "fully taken into account" in that determination.  (Pet'r Mem. at 15-16).  The argument

goes that Petitioner's previous state conviction should have been "fully taken into account" by

considering the prior offense as a downward adjustment factor in the determination of the offense level

for his new sentence, but Counsel's incompetence precluded appropriate crediting of Petitioner's prior

sentence.  (Pet'r Mem. at 16).

Petitioner misunderstands § 5G1.3(b)'s trigger.  Garcia-Hernandez is a case from December

2000 applying § 5G1.3(b) before its amendment on November 2003.  Because Petitioner was sentenced

on March 11, 2005, the amended version of the Sentencing Guidelines must govern.  Ambiguities over

what constituted "fully taken into account" led to the 2003 amendment of § 5G1.3(b) to state that it

applies in "cases in which all of the prior offense (i) is relevant conduct to the instant offense...; and (ii)

has resulted in an increase in the...offense level for the instant offense."  United States v. Brennan, 395

F.3d 59, 66-67 (2d Cir. 2005).  See also, U.S. Sentencing Guidelines Manual § 5G1.3 cmt. n.2

(2005).  U.S.S.G. § 1B1.3 further defines relevant conduct as "all acts and omissions committed, aided,

abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" that "were

part of the same course of conduct or common scheme or plan as the offense of conviction." Brennan, 395 F.3d at 70. See also, U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A), (a)(2) (2005).

Petitioner argues that the time he served as a result of his probation violation should have been taken into account under § 5G1.3(b) because the violation was a direct result of the instant offense and, therefore, relevant conduct. However, § 5G1.3(b) does not apply because, although the time he served for the probation violation was a result of the instant offense, it is unrelated to the conduct Petitioner was originally convicted for that put him on probation in the first place. Petitioner's federal sentence was based on a one count violation of 21 U.S.C. § 841(a)(1), and thereby unrelated to his state convictions for Burglary, Grand Larceny, and Criminal Possession of Stolen Property that warranted his state imprisonment. The conduct that led to his state conviction is unrelated to the conduct underlying his federal conviction. Therefore, the Court should not have deducted from Petitioner's federal sentence any time already served in determining the Sentencing Guideline range for the federal offense.

Petitioner's argument for § 5G1.3(b) credit also fails because, if § 5G1.3 were to apply, Petitioner would fall within subsection (c); not subsection (b). Application Note 3(C) of § 5G1.3 states that "Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole or supervised release revoked." When subsection (c) applies, the Court is given the discretion to impose a sentence concurrently, partially concurrently, or consecutively with the requirement that the discretion be used to determine a "reasonable" punishment for the instant offense. United States v. Vazquez-Alomar, 342 F.3d 1, 5 (1st Cir. 2003). However, the default rule is for the sentence for the instant offense to run consecutively. Id. Because Petitioner falls under this category, his sentence for the instant offense

must run consecutively to his undischarged term of imprisonment.  Accordingly, it was not objectively unreasonable for Counsel not to seek to have § 5G1.3(b) apply, and any such failure would not have changed Petitioner's sentence.

## IV.  CONCLUSION

For the foregoing reasons, the instant petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is **DENIED**, and the action is **DISMISSED**.

**IT IS SO ORDERED**

DATED:June 22,2006

Thomas J. McAvoy
Senior, U.S. District Judge

- 9 -